CITY OF GRAND RAPIDS *v.* IOSCO LAND CO.

1. TAXATION—STATUTES—SPECIAL ASSESSMENTS FOR STATE TRUNK
   LINE HIGHWAYS IN CITIES—REFUNDS.
   Purpose of Act No. 107, § 19a, subd. 5d, Pub. Acts 1933, is to
   provide for relief to taxpayers through use of weight and gaso-
   line tax collections for payment or refund of special assess-
   ments levied for construction of State trunk line highways
   within incorporated cities and villages.

2. SAME—REFUNDS—PARTY TO WHOM PAYABLE.
   Refund, under Act No. 107, § 19a, subd. 5d, Pub. Acts 1933,
   providing for relief to taxpayers through use of weight and
   gasoline tax collections for payment or refund of special as-
   sessments levied for construction of State trunk line highways
   within cities and villages *held,* payable to party who paid as-
   sessment in advance rather than to such party's grantee who
   owned land at time payment of the refund was authorized.

3. WORDS AND PHRASES—TAXATION—REFUNDS.
   ''Refund'' as used in statute providing for relief of taxpayers
   from certain special assessments *held,* to mean to pay back
   money by party which received it to party·which paid it (Act
   No. 107, § 19a, subd. 5d, Pub. Acts 1933).

4. DEEDS—COVENANTS—GRANTOR'S RIGHT TO REFUND OF PREVIOUSLY
   PAID TAXES.
   A deed conveying realty which made no special provision for
   transfer of right to refunds of taxes or special assessments
   previously paid *held,* not to constitute an assignment to
   grantee of right to refund created by statute enacted five years
   after payment and two years after conveyance was made, such
   a right not being one which runs with the land (Act No. 107,
   § 19a, subd. 5d, Pub. Acts 1933).

Appeal from Superior Court of Grand Rapids;
Taylor (Thaddeus B.), J. Submitted October 15,
1935. (Docket No. 74, Calendar No. 38,589.) De-
cided December 10, 1935.

Bill of interpleader by the City of Grand Rapids,
a municipal corporation, against the Iosco Land ·

Company, a Michigan corporation, and the Michigan Trust Company, a corporation, and Leland N. Young, trustees of the estate of Charles F. Young, deceased, to determine the right to tax refunds. Decree for defendant trustees. Defendant Iosco Land Company appeals. Affirmed.

*Travis, Merrick, Johnson & McCobb,* for defendant trustees.

*Penny & Clark* (*N. B. Kelly,* of counsel), for defendant Iosco Land Company.

Butzel, J. In 1925, the city of Grand Rapids by appropriate action widened Division avenue, a State trunk line highway. It paid abutting property owners for the land taken and levied an assessment on the real estate benefited by the improvement for part of its cost. This embraced a parcel of property then owned by the trustees of the estate of Charles F. Young, deceased. The assessment was payable in 10 equal parts, but all could be paid at once, at the option of the taxpayer. The trustees paid $16,045.30, the entire amount of their assessment, on May 16, 1928. In 1931, in accordance with an option given some time theretofore and after a judicial determination of the right to sell the property (see *Young* v. *Young,* 255 Mich. 173 [77 A. L. R. 963]), proper deeds were executed conveying the title to the property to the Iosco Land Company.

In 1933, almost two years after the conveyance and approximately five years after the tax was paid, the legislature enacted Act No. 107, Pub. Acts 1933, § 19-a, subd. 5d, which provided that certain sums should be used by the city for *"The payment or refunding to the taxpayers, without interest,* of all or any portion of the special assessment or assess-

ments for the cost of opening, widening or improving any State trunk line highway within any incorporated city or village, which cost was levied as a special assessment or assessments prior to this amendatory act: Provided, That the legislative body of such city or village desiring to come under this subdivision shall so determine; * * * Provided, That when such payment and/or refund shall be determined by such legislative body, *the same shall apply in equal pro rata benefits to all lands so assessed* for such special assessment or assessments.''

The obvious purpose of Act No. 107, *supra,* was to make it possible to secure relief to taxpayers through the use of weight and gasoline tax collections for the payment or refund of special assessments levied for the construction of highways. Pursuant to this act, the city commission of Grand Rapids adopted a resolution extending the due dates of the 6th and subsequent installments of the assessment for widening Division avenue for two years and further providing:

"That of all moneys received under the Horton act, available under Act No. 107, § 19a, subd. 5d, Pub. Acts 1933, 50 per cent. thereof, not however, to exceed the amount due on any one installment, shall annually be set aside and paid in liquidation of said tax, refunds to be made therefrom to those who have paid their tax in advance."

The city of Grand Rapids thus has on hand the sum of $1,604.58, which would have been the sixth part of the assessment against the property formerly belonging to the Young estate, had it not been previously paid. It seeks to refund this amount to the proper party and has filed a bill of interpleader to determine whether to make payment to the trustees of the Young estate or the Iosco Land Com-

pany, both of whom are claimants. The Iosco Land Company contends that it is entitled to the refund as the owner of the property at the time the payment of the refund was authorized; that had not such advance payment been made, the land company would have assumed it, and paid less for the property, subject to the assessment; that notwithstanding the fact that subdivision 5d of the act recites the "refunding to taxpayers," nevertheless its manifest purpose was to relieve property from the assessment inasmuch as it provides that the payment or refund shall apply in equal *pro rata* benefits to all land so assessed. The trustees of the Young estate contend that Act No. 107 distinctly provides for a refund "to the taxpayers" and that the local legislative body provided that the refunds were to be made to those who had paid their tax in advance.

The language of the statute does not expressly designate to whom the tax should be refunded in the event that there has been a conveyance of the land. While it is true that the assessments for the widening are made against the land, and the refund is made in accordance with the original amount assessed against the land, the language of the statute is such that we believe it was intended that the person who paid the tax should receive the funds, for in cases where the tax has been paid, the legislature provided for "refunding to the taxpayers." The word "refund" is defined in 3 Bouvier, Law Dictionary (Rawle's 3d Rev.), p. 2856:

"To pay back by the party who has received it, *to the party who has paid it,* money which ought not to have been paid."

The word "taxpayer" by itself does not aid us, since both the grantor and the grantee were "tax-

payers;" but construing the two words together, "refund" and "taxpayer," it is clear that the legislature intended these moneys should be paid to the party who originally paid the tax.

Our construction of the instant statute is supported by authority. In *Savage-Scofield Co.* v. *City of Tacoma*, 56 Wash. 457 (105 Pac. 1032), under an ordinance which provided that certain sums should be "rebated to the owners of the property where the special assessment against the property * * * shall have been paid," the court held the grantor of the property was entitled to the rebate, saying:

"The evident object of the ordinance was to make restitution. This means to restore. * * * The appellant (plaintiff) says that the latest dictionaries * * * define the word 'rebate' to mean 'to draw back.' * * * Accepting the common use of the word 'rebate'—'to draw back,' one cannot draw back something which he never put forward, and it would be more violence to the plain meaning of words to hold that the word 'rebate' as used in this ordinance has reference to a stranger who had never given or put forth the amount in question, than it would be to hold that the word 'owner' as used in the ordinance had reference to the person who was owner at the time that the money was paid into the treasury instead of the person who happened to be owner at the time when the rebate was due."

See, also, *Borton* v. *City of Portland*, 62 Ore. 544 (125 Pac. 847).

The statute established the right to the refund in the grantor. The deed of the premises did not constitute an assignment to the grantee of this right. The deed, while conveying the hereditaments and appurtenances, gave no indication that the transfer of the right to future refunds of taxes or assess-

ments previously paid, was even contemplated. In *Robertson* v. *Singleton,* 156 Miss. 220, 226 (125 South. 421), the court had before it conflicting claims of a grantor and his grantee to a refund of a tax previously paid by the grantor. The court said:

"At the time of the transaction, neither party thought that there would be any refund, and neither doubted the validity of the paving as an original charge against the property, but it had been paid and discharged, and the appellees (grantees) received all that they bargained for under their deed in securing the land free from liens or charges. * * * It is true that Robertson (grantor) received more in the aggregate than he expected to receive, but this fact does not constitute any equity in favor of appellees (grantees)."

In *Borton* v. *City of Portland, supra,* the court said:

"There is nothing ambiguous or uncertain in·the charter as to whom the money should be paid (the court had previously determined that the charter authorized payment to the grantor). Plaintiff's grantor, by the conveyance of the land, did not assign the claim in question. In the absence of a special agreement to that effect, the right to receive the amount to be refunded did not pass to plaintiff. Such right did not run with the land. * * * The grantee, Borton, took what was conveyed by the deed, which was the real estate in its then condition."

See, also, *Bernays* v. *Wurmb,* 4 Mo. App. 231.

The decree in favor of the trustees of the Young estate is herewith affirmed, with costs to appellees.

POTTER, C. J., and TOY, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.