## STATE ex rel. SIDENFADEN v. UNITED STATES FIDELITY & GUARANTY CO.

### No. 10463.

United States Court of Appeals
Seventh Circuit.

Dec. 4, 1951.

Ben Copple, Milroy R. Blowitz, Chicago, Ill., for appellant.

George Fiedler, Thomas Amberg and Daniel R. Labar, all of Chicago, Ill. (Fiedler & Amberg, Chicago, Ill., of counsel), for appellee.

Before MAJOR, Chief Judge, DUFFY and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

This suit, commenced by the filing of the complaint in the Superior Court of Cook County, Illinois, on July 7, 1949, was removed, on motion of the defendant, to the United States District Court for the Northern District of Illinois, Eastern Division. The District Court, on June 15, 1951, entered judgment dismissing the complaint with prejudice on two grounds, (1) that the plaintiff did not have a right to sue on the bonds declared upon inasmuch as plaintiff was not named as an obligee therein and that the bonds were not given for his use or benefit, and (2) that in any event, if plaintiff ever had a cause of action on the bonds it was barred by the Illinois ten-year statute of limitations. Ill. Rev.Stat. 1951, c. 83, § 17. From such judgment of dismissal the appeal comes to this court.

The issues raised and argued in this court are the same as those upon which the decision of the District Court rests. It is agreed that the first issue is determinable in accordance with the law of the State of Missouri, and the second with that of the State of Illinois. It is obvious, however, that if the decision of the District Court is sustained on the first issue, there remains no reason to consider or decide the second issue.

The facts material to the issue for decision, as alleged in the complaint, may be briefly stated. Plaintiff's mother, Emily Sidenfaden, died testate on June 18, 1920. Her estate was administered in the Probate Court of Buchanan County, Missouri, and it was determined on September 12, 1921 that the distributive share of the plaintiff amounted to $16,501.48. The whereabouts of the plaintiff at that time was unknown and he did not receive such distributive share. Plaintiff not having

been heard from for seven years, an estate was opened for him wherein it was declared that he was presumed to be dead, and his distributive share in his mother's estate was ordered distributed to his two children, Henry Frank Sidenfaden and Rosalina V. Holt, upon condition that a bond be given by each, as provided by Sec. 270, Article 10, Chapter 1, Missouri Revised Statutes, 1929, RSMo 1949, § 466.150. Such bond was furnished by each of the children, with the defendant as surety. The bonds were dated May 23, 1930, and, so far as here material, are in the same form. They are both declared upon in the complaint and recovery is sought for the respective amounts paid to the two children, with interest from February 18, 1949.

The complaint alleges that plaintiff did not learn of his mother's death or of the distribution of her estate until January 10, 1949; that on February 18, 1949, he made demand upon Henry Frank Sidenfaden, Rosalina V. Holt and the defendant for the payment of the sums which had been paid to the children, and that payment was refused both by the children and the defendant.

The statute pursuant to which the bonds in suit were given, in effect at the time of their execution, reads as follows: "Before any distribution of the proceeds of the estate of such supposed decedent shall be made, the persons entitled to receive the same, respectively, shall enter into a bond to the state of Missouri, with sufficient security, to be approved by the probate court having jurisdiction of said estate, in such sum and in such form as the court shall direct, conditioned that if said supposed decedent shall in fact be alive at the time of such distribution, then the *distributors* shall refund the amount received by them, on demand, with interest thereon from the date of such demand; but if any person entitled to receive such distribution shall be unable to give the security aforesaid, then the money which he would be entitled to receive shall be paid over to the county treasurer, and by him loaned at the highest rate of interest obtainable, on security approved by said probate court, which interest shall be paid annually to the person entitled thereto, and such money shall remain so at interest until the security aforesaid is given, or the court, upon application, shall order it to be paid to the person or persons entitled to receive the same." (Italics supplied.)

We have italicized the word "distributors" in quoting the statute because of plaintiff's contention that the word was used in the 1929 statute as a result of a mistake or typographical error and that the legislature intended to use the word "distributees." It is argued that any other view would make meaningless the words which immediately follow "distributors," that is, "shall refund the amount received by them, on demand".

Use of the word "distributees" rather than "distributors" is crucial to plaintiff's contention that the bonds were given for his use and benefit. We are thus not confronted with the problem of construing a statute because of its ambiguity, but we are asked to hold that the legislature in the use of one word intended another, each of which is equally definite in its implication and each of which means the opposite of the other.

Unfortunately, no case is cited and our research reveals none where a Missouri court has considered the question for decision; however, our study of the situation leads us to the belief that we must accept the statute as enacted and that no justification exists for the changing of even a single word, particularly one of such plain and certain meaning. In fact, the Missouri statute, Sec. 655, Article 2, Chapter 4, Missouri Revised Statutes 1929 RSMo 1949, § 1.090, expressly requires that in the construction of all statutes of the State of Missouri "Words and phrases shall be taken in their plain or ordinary and usual sense".

Moreover, the history of the provision under discussion militates against plaintiff's contention that the word "distributors" was used by mistake. The provision was first enacted in 1909, re-enacted in 1919, in 1929, and again in 1939. In each enactment, the phraseology has been ex-

actly the same except as to the word in controversy. The original enactment in 1909, as well as the re-enactment in 1919, contained the word "distributers." In 1929, the word "distributers" was changed to "distributors." There is no logical basis for the conclusion that the legislature used the word "distributers" in 1909 by mistake or error, repeated it for the same reason in the 1919 revision and changed it in 1929 to another word which means substantially the same thing, without discovery that the word was mistakenly employed. True, the legislature in the 1939 revision changed the word "distributors" to "distributees." Why this change was made we do not know, but certainly such change furnishes no support for the thesis that it was intended to be used in the original enactment and in its revision twice made. If the legislature made a mistake or typographical error, it would be just as reasonable to think that it did so in 1939, when it for the first time used the word "distributees," as on the three previous occasions when it used "distributors" or "distributers."

We do not agree with plaintiff's argument that use of "distributors" makes the words which immediately follow, "shall refund the amount received by them, on demand," meaningless. The distributors of the estate of a supposed decedent would in every instance necessarily be either (1) the person administering the estate of such supposed decedent or (2) the county treasurer to whom the estate had been paid over because the persons entitled to receive such distribution were unable to give the required security. But each of these officials necessarily would first have to receive the estate as a prerequisite to its distribution. When it develops that the person presumed to have been dead is in fact alive, it also develops that the distribution was wrongfully made and the one who has made such distribution is required to make refund of the property wrongfully distributed. And to protect him in such contingency a bond is required.

As plaintiff would have us read the statute, it requires that the "distributees shall refund the amount received by them, on

demand." Refund to whom? The word "refund" is defined, "To pay back by the party who has received it, to the party who has paid it, money which ought not to have been paid." City of Grand Rapids v. Iosco Land Co., 273 Mich. 613, 263 N.W. 753, 755, 105 A.L.R. 695; Daniel v. Richcreek, Tex.Civ.App., 118 S.W.2d 935, 937; The Cyclopedic Law Dictionary (3rd edition, 1940). Thus, by use of the word "refund" in connection with the word "distributees" it seems reasonable to think it was intended that the money should be returned by the distributees to the person from whom it was received, either the administrator or the county treasurer. But plaintiff argues that the "refund" must be made to the alleged missing person (plaintiff here), one who is a stranger to the property in the sense that it has never been in his custody or control. In other words, plaintiff's theory requires not only that the word "distributors" be read as "distributees" but that "refund" be given an unnatural meaning. Or, to be more specific, his theory would require the clause, "then the distributors shall refund the amount received by them, on demand," to read, "then the distributees shall pay to the supposed decedent the amount received by them, on demand." If the Missouri legislature had intended to confer such a right upon a supposed decedent and to impose such an obligation upon the distributees, it no doubt would have used words evidencing such a purpose. And even though the attainment of such a purpose might be desirable, we are not permitted, under the guise of construction, to produce a result which the legislative enactment does not permit.

■ Thus, in our view, the statute contemplates that the bond shall be given for the protection and benefit of those who have wrongfully distributed the estate of an alleged deceased person, either the administrator of such estate or the county treasurer. And there can be no doubt but that the parties and the Probate Court which approved the bonds upon which plaintiff relies so construed the statute. The bonds recite that the distributees named therein, as principals, and the de-

fendant as surety acknowledge themselves "* * * bound and indebted to the State of Missouri for the use of such persons who shall make the distribution in said estate hereinafter mentioned." Each of the bonds recites that the principal is "*` * * one of the heirs of the said Henry Sidenfaden, a supposed deceased person, and is entitled to his distributive share of said estate as provided in the orders of the Probate Court of Buchanan County, Missouri, on condition that he deposit with said Probate Court a bond for the protection of such persons making such distribution if in fact the said Henry Sidenfaden, a supposed deceased person, should be alive at the time of such distribution * * *." While the State of Missouri is named as obligee in the bonds, the language makes it certain that the persons who made the distribution are the real beneficiaries and that the bonds were given for their protection. There is not a word which indicates that plaintiff was intended as the beneficiary or that they were given for his use or benefit.

The law is well settled in Missouri, and perhaps in all jurisdictions, that only the named obligee or the person for whose benefit a bond is given can maintain a suit thereon. The rule is set forth in Eau Claire-St. Louis Lumber Co. v. Banks, 136 Mo.App. 44, 117 S.W. 611, at page 614, where the court stated: "But in all of the cases to which the attention of the court has been directed, it has been held that to enable third parties, not named in the bond or in the contract, to sue on the bond, it must clearly appear, by the terms of the contract or bond, that they are of the class covered by the conditions of the bond. When they are, they can sue, whether named in the bond or not; when they are not, they have no right of action on the bond." To the same effect, see State ex rel. Maggi v. Loomis, 88 Mo.App. 500, 506, and cases therein cited. Thus, we think it is plain that plaintiff is without right to maintain the instant action for the reason that he is not named as an obligee in the bonds and they were not given for his use or benefit. Such being the case, we find no occasion to consider or decide the further defense that plaintiff's cause of action was barred by the Illinois ten-year statute of limitations.

The judgment appealed from is affirmed.