Daniel A. DESMOND, Libelant-Appellee-Appellant,

v.

UNITED STATES of America, Respondent-Appellant-Appellee.

No. 43, Docket 23129.

United States Court of Appeals Second Circuit.

Argued Oct. 6, 1954.

Decided Dec. 2, 1954.

**949**

kins and Arthur M. Boal, New York City, of counsel), for respondent.

Before CLARK, Chief Judge, and L. HAND and FRANK, Circuit Judges.

FRANK, Circuit Judge.

■ 1. We affirm the trial judge's dismissal of the negligence action on the basis of his excellent opinion, reported in 105 F.Supp. 9.

■ 2. He found that libelant had reached "the point of maximum cure" on August 26, 1951, exactly five years after his admission to the U. S. Marine Hospital. But the evidence introduced by libelant shows his condition to have been incurable—and recognized as incurable—before the period for which maintenance and cure have been allowed. Libelant's sole medical witness was a physician who had not treated him but had examined him in 1948 and again in 1953. His diagnosis—cerebral arteriosclerosis and its accompaniments—was the same on both occasions, and he considered the libelant's condition worse on the second occasion. According to this physician's testimony, the disease was incurable. Similarly, according to the testimony of libelant and his wife, physicians at the Marine Hospital, either in 1949 or early in 1950, informed the libelant not to return to the hospital except in case of an emergency. In these circumstances, it cannot be said that, for the period of time for which maintenance and cure have been allowed, libelant's medical advisers held any hope for his recovery. And when meaningful hopes for recovery end, the shipowner's liability ends. Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993.

No different answer is suggested by testimony of the libelant's medical witness that further treatments are indicated.[1] The treatments to which he refers are for a period subsequent to the

Harry Eisenberg, New York City (Jacob Rassner, New York City, of counsel), for libelant.

J. Edward Lumbard, U. S. Atty., New York City (Tompkins, Boal and Tomp-

---

1. Among these recommended treatments are "things to improve his circulation," "drugs like Dilantin, or phenobarbital, to control his nerves as well as his at-tacks of passing out * * *," "things like Dexakine or Dexamil" to help in regard to his crying spells, etc.

date of trial, and not for the period for which maintenance and cure have been allowed. But even assuming that these treatments would have been appropriate during the period in question, it does not follow that the respondent would be liable for their cost. For the physician indicated that the purpose of the treatments were not primarily to cure the patient, but to "carry him along," to relieve him, and to "make him more comfortable."

■ The shipowner is liable for maintenance and cure only until the disease is cured or recognized as incurable. Convention of the General Conference of the International Labor Organization, ratified by the Senate and proclaimed by the President as effective for the United States on October 29, 1939, 54 Stat. 1693, Art. 4, paragraph 1. If incurable, the shipowner has no further liability, whether or not the patient requires additional treatment to restrain degeneracy or relieve pain. In Lindgren v. Shepard S. S. Co., 2 Cir., 108 F.2d 806, 807, this court reversed a judgment for maintenance and cure to a syphiletic although we said that "he will need periodic examinations and treatments for the rest of his life" since "such treatments are to prevent relapses, not to effectuate further cure." In Farrell v. United States, 2 Cir., 167 F.2d 781, 785, affirmed 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850, we affirmed a refusal to allow for future maintenance and cure although "appellant will from time to time require some medical care to alleviate his attacks of headaches and epileptic convulsions, which may indeed become worse in the future." In Muruaga v. United States, 2 Cir., 172 F.2d 318, 321, in reversing a judgment for maintenance and cure to a victim of an incurable cardiovascular disease, we said: "But when maintenance and cure has brought about all the improvement to be expected in an incurable disease the shipowner's liability ends and thereafter the health of the seaman is at his own risk so far as the shipowner is concerned. If the seaman thereafter needs attention to maintain his improvement at the maximum, to assist him in recovery from relapses, or to restrain the progress of the disease, the shipowner is not bound to provide that." The writer of this opinion thinks the ruling unduly harsh; but what he thinks is immaterial (unless, perhaps, it induces the Supreme Court to change the doctrine it has adopted).

As we reverse the allowance, we do not reach the question of possible interest upon it.

Reversed on respondent's appeal; affirmed on libelant's appeal.